**Gary L. BLANKENSHIP, et al., Plaintiffs,**

v.

**Frank O. GUNTER, et al., Defendants.**

**No. CV88–L–154.**

United States District Court,
D. Nebraska.

Dec. 30, 1988.

Gary L. Blackenship, pro se.

Richard Campbell, pro se.

Yvonne E. Gates, Asst. Atty. Gen., Lincoln, Neb., for defendants.

## MEMORANDUM ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

URBOM, District Judge.

The plaintiffs, inmates at the Nebraska State Penitentiary, have sued under 42 U.S. C. § 1983, claiming that the refusal of the defendants, administrators of the penitentiary, to allow the plaintiffs to send money

from the plaintiffs' prison trust account for charitable contributions violates their civil rights. The defendants have moved for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provide that:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . "

The allegations of the complaint are, essentially, that on or about November 16, 1987, the plaintiff Blankenship requested that $12.00 be withdrawn from his inmate trust account and sent to Pastor Nelson G. Turner of Omaha, Nebraska, and on February 23, 1988, the plaintiff Campbell requested that $10.00 be sent from his account to the World Wide Church of God. Both requests were denied. Campbell then filed grievances. The responses of the defendants cite *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355 (1987) in which the Supreme Court of Nebraska held that Neb. Rev.Stat. § 83–183(3) (Reissue 1981) mandates restrictions on the use of inmate wages to the support of dependents, purchases from the commissary, and savings to be paid to the inmate upon release from the penitentiary, and that the operational memorandum of the penitentiary mimicking the statutory limitation was not violative of Meis' constitutional rights. The state district judge had concluded that the operational memorandum was valid except for a sentence that read "Any exception to this stated list must have the approval of the Warden." The judge found that provision to be vague and therefore enjoined the warden from granting any exceptions. No appeal was taken from that ruling. In responding to Campbell's appeal to the director, defendant Gunter referred to the *Meis* case, saying:

"Prior to District Court Judge Endacott's decision in the *Meis v. Grammer* case, the Penitentiary did permit inmates to send funds to persons other than family members. Such approval was granted on a case-by-case basis. Judge Endacott's ruling in the *Meis* case indicated that such discretionary actions by the Warden were inappropriate. If you wish to send funds to persons other than you [sic] immediate family members, you may send the money to a family member and ask that the family member make payment to the third party or organization."

Religious rights protected by the Constitution were not dealt with by the Nebraska Supreme Court in the *Meis* case.

The Supreme Court of Nebraska analyzed the several factors specified in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and concluded that the restrictions on use of the prison trust funds were constitutional as to Meis, who wished to send an amount from his prison trust fund to a friend in payment on a debt.

*Turner v. Safley* said:

"If *Pell* [*v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) ] *Jones*, and *Bell* [*v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ] have not already resolved the question posed in *Martinez*, we resolve it now: when a prison regulation impinges on inmate's constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if 'prison administrators . . ., and not the courts, [are] to make the difficult judgments concerning institutional operations.' *Jones v. North Carolina Prisoners' Union*, 433 U.S. [119] at 128 [97 S.Ct. 2532 at 2539, 53 L.Ed.2d 629 (1977) ]. Subjecting the day-to-day judgments of the prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prisons' administration. The rule would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at

hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby 'unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration.' *Procunier v. Martinez,* 416 U.S. 396 at 407 [94 S.Ct. 1800 at 1808, 40 L.Ed.2d 224 (1974) ]."

The court in *Turner v. Safley* then set out several factors that are relevant in determining the reasonableness of the regulation at issue. They were (1) there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, (2) whether there are alternative means of exercising the right that remain open to prison inmates, (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, and (4) the absence of ready alternatives.

As to the plaintiffs, the governmental interest put forward to justify the limitations is expressed by the Supreme Court of Nebraska in the *Meis* case as follows:

"The penitentiary administrators testified that the operational memorandum was necessary for the 'safety, security, and good order of the institution,' in that it provides a means of controlling the flow of inmate funds and thereby helps control illegal activities such as gambling, purchasing drugs, and the applying of pressure by one inmate against another. The administrator's admitted, however, that although policies as to the transfer of property from one inmate to another exist, it would be possible for an inmate to use canteen purchases as a means of paying off another inmate. An inmate could also deposit funds in an outside financial institution and deal with those funds without being subjected to the restrictions imposed by the memorandum."

It is obvious that there is a rational, legitimate connection between the disbursement restrictions and the institutional goal of providing for the safety and security of the prison by controlling the flow of funds to help control illegal activities and the pressuring of inmates by inmates. In wrestling with whether requested donations be allowed to a particular church or other religious person or organization should be permitted, there would be raised the whole specter of the legitimacy of the disbursement such as whether the person or organization to whom a "donation" is requested is in fact a religious organization and not someone who, for the moment, is fronting as such, whether the inmate has any genuine connection of a religious nature with the requested recipient, and whether the "donation" represents some response to undue pressure or threat to the inmate. These are not readily determinable by an administration and to expect the administration to make an investigation of every request for transfer of funds imposes an unnecessarily heavy burden on the administration.

There are alternative means open to the plaintiffs to exercise their interest in making donations. Money can be put, according to the statute and the operational memorandum, into an interest bearing account in a designated financial institution and thereafter, from all appearances, that money can be controlled by the inmate as he chooses. Money can be sent to a family member and the family member may be requested to make the specified donation. Blankenship has stated in his affidavit, filing 16, that his family has requested that he not write them, but that falls short of a showing that his family would not comply with a request by him to make a donation of funds sent by him to them.

What I have said indicates that the statutory and institutional limitations are not perfect in that they do not avoid all the dangers sought to be touched by the statute and operational memorandum, but a program of control does not have to be perfect to meet constitutional requirements.

 The magistrate's memorandum of April 13, 1988, raised another point. He said:

"If plaintiffs' trust funds are comprised, in part, of nonemployment monies, it is difficult to perceive how forbidding them from sending the funds to a religious organization furthers any legitimate penological purpose."

I suppose that is a conceivable argument, but it seems to me that the identity of the source of the funds that come into the prison trust account and therefore must be accounted for by the prison authorities does not affect the uses the prisoner may wish to make of those funds. Pressure on other inmates, engaging in gambling or other illegal pursuits, payment of illegal debts, or investment in improper activities are as likely with nonemployment funds as with employment funds.

The magistrate in a footnote also wonders whether prison officials have created a property interest in favor of the inmates in broader use of funds, if they allow inmates to make other uses of their prison wages than those three specified in § 83–183(3). The Supreme Court of Nebraska's decision in the *Meis* case, combined with Judge Endacott's decision in the *Meis* case, combined with the attitude of the prison administration as reflected in the attachments to the complaint in this case, appear to establish for the purposes of this case that there are no other uses that are permitted by the prison officials. No claim has been made by the plaintiffs that other uses are permitted and I do not think it necessary, therefore, to deal with such an issue here.

I am persuaded that the motion for summary judgment must be granted.